THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CHRISTOPHER EVINS,<br>On Behalf of Himself and a<br>Class of Similarly Situated Individuals,<br><br>Plaintiff,<br><br>v.<br><br>GLOW NETWORKS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No: 4:14-CV-00544-DW<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT

The parties have reached an agreement to settle this case. The settlement is fair, reasonable and beneficial to the class members and should be readily approved. The settlement creates a common fund of $418,635.06 covering 50 Project Radio Frequency Testers ("RFTs") who worked for Defendant in the past three years, including Plaintiff, Christopher Evins and early opt in Plaintiffs, Aaron Weathers, Charanjit Singh and Victor Perea. The 50 RFTs will receive notice of their right to participate in the settlement and their net share of the settlement proceeds. The settlement results in a projected average gross recovery of $8,372.30 per individual – with individuals who worked the most covered workweeks receiving gross recoveries of up to $27,936.56. All putative class members will be given the choice to participate or not to participate. Unlike a class action settlement where all class members' claims are released through the settlement, only putative class members who choose to participate in the settlement will have their claims released.

## I. Facts and Procedural History

Plaintiff brought this lawsuit for alleged violation of the Fair Labor Standards Act (hereinafter "the Litigation"). Plaintiff sought relief on behalf of a putative class consisting of Defendant's RFTs. The parties conducted detailed discovery and were on the precipice of briefing Plaintiff's motion for conditional certification of an opt-in Fair Labor Standards Act ("FLSA") class when the case settled at mediation with this Court's MAP director, Jill Morris.

After the exchange of extensive discovery consisting of depositions and review of hundreds of documents, interrogatory answers and pay statements, the parties successfully reached a settlement. The parties mediated the case on December 12, 2014 before Jill Morris and after another eight weeks of negotiations, reached a final written settlement agreement on February 15, 2015.

Plaintiff and class counsel believe the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted. Plaintiff and Plaintiff's counsel, however, also recognize and acknowledge the risk, length and expense of continued proceedings necessary to prosecute the litigation through trial and appeal, especially in complex cases like this action, and believe that the Settlement confers substantial benefits upon the class members. Defendants deny Plaintiff's claims in their entirety and deny any wrongdoing, but wish to avoid the uncertainty and risk attendant with litigation.

The main terms of the agreement are as follows:

- The settlement makes available and pays each of the 50 RFTs who choose to participate their share of the Net Aggregate Settlement Amount.

- Class Members who submit a timely Consent to Join Form ("Participating Class Members") will receive their pro rata portion of the settlement based on the number of work weeks as a RFT within three years prior to the date of settlement.

- All Participating Class Members who choose to claim their share of the common

> fund settlement by submitting a timely and valid Consent to Join Form will release any state and federal wage and hour claims during the class period in return for receiving payment from this fund.

- Putative Class Members who do not affirmatively choose to participate in the settlement will not release any claims and will not receive any payments under the terms of the Settlement.

- Out-of-pocket litigation expenses of $2,940.99 plus attorneys' fees of $139,545 (one-third of the gross settlement fund) to be paid to class counsel as determined by the Court.

- A payment, in addition to the common fund, of $25,000 for the general release of all claims of Plaintiff Christopher Evins, including any claims resulting from his termination.

The settlement agreement is attached as Exhibit 1.

## II. Question Presented

Should the Court grant Plaintiff's unopposed motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends contested litigation prior to trial?

## III. Argument

### A. Approval of the settlement is warranted.

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel and there are no absent class members whose claims are being settled. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678 (D. Kan. 2004); *Clougherty v. James Vernor Co.*, 187 F.2d 288, 290 (6th Cir. 1951). Thus, the reasons for judicial scrutiny of class action settlements are not present in FLSA opt in settlements, because absent class members are not bound by the case's outcome. *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977).

Nonetheless, courts have held that settlement of an FLSA collective action generally

requires court approval because private settlements will not effectuate a valid release for the employer. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, wage claims under the FLSA are typically settled or compromised in one of two ways. First, under 29 U.S.C. § 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. Second, under a private FLSA enforcement action, district courts may approve settlements resulting from contested litigation over a *bona fide* dispute between the parties. *Lynn's Food Stores*, 679 F.2d at 1353. When the latter option is proposed, as here, the Court should approve the settlement "after scrutinizing the settlement for fairness." *Id.* (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. 7/12/12) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiff respectfully submits that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel and

4

provides meaningful, significant, monetary relief to all party Plaintiffs. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was contested and settled after a mediation with this Court's MAP Director, Jill Morris. Only after months of discovery, data analysis and shuttle diplomacy via the mediation process, were the parties able to reach an accord. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt. Plaintiff claimed that Defendant failed to pay him all overtime compensation due for work performed in excess of 40 hours in a workweek. The Defendant claimed that, among other things, Plaintiff was not entitled to overtime and that Defendant has complied at all times with the FLSA. Defendant further questioned the availability of collective action certification in this case. Therefore, both substantive and procedural disputes created obstacles in the litigation.

The settlement offers a significant payment to the Plaintiff and participating class members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the number of weeks worked in the covered job. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals.

5

Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, Plaintiff respectfully requests that this Court approve the settlement and order that the Plaintiff and the Participating Class Members be paid in accordance with the terms of the settlement agreement. A proposed order granting settlement approval is attached as Exhibit 2.

## IV. Plaintiff's Application for Fees & Expenses Should be Approved

As part of the settlement, Plaintiff requests one-third of the Settlement Fund for payment as attorneys' fees, plus expenses of $2,940.99. Such fees and expenses are reasonable.

### A. Legal Standard

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so because Defendant has agreed that it will not oppose up to one-third of the Settlement Fund as attorneys' fees. The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid

6

from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method[1] and assures that class members do not experience undue delay in receiving their share of the settlement.

As courts including the Eighth Circuit have routinely recognized, using a percent of the

---

[1] Class Counsel maintain contemporaneous records of the time spent on their wage and hour cases and will provide lodestar information to the Court upon request.

fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also Stoneridege Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo. 2005). Moreover, other Circuits express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Prudential Ins. Co.*, 148 F.3d at 333 (the percentage of the fund approach "rewards counsel for success and penalizes it for failure.") (citation omitted).

While "[t]he Eighth Circuit has not set forth a specific percentage benchmark to analyze the reasonableness of attorney fees under the percentage-of-the-fund method," courts in this Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a

common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, Docs. 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Brown v. Time Warner Cable, Inc.,* Case no. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D.Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Burks*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p. 2 & Doc. 38, p. 4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *EEOC v. Fairbault Foods, Inc.,* Civ. No. 07-3976, 2008 WL 879999, at *4, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 WL 2671105, at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City*

9

*Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

Here, Defendants have agreed not to oppose attorneys' fees of up to one-third of the settlement fund – well within the reasonable range of attorney fee awards. Indeed, the representation agreement between Class Counsel and the Plaintiff is for a fee of 35%. As a result, the requested fee percentage is below that agreed to and which represents what a lawyer can reasonably obtain from a client. Similarly, all class members choosing to participate are informed that Class Counsel will receive one-third of the fund. If the class member does not like the deal, then he or she can attempt to hire another lawyer to prosecute his or her case at a lower rate because no class member releases his or her claim without submitting a Consent to Join Form. Further, Plaintiff's out-of-pocket costs, which included the mediator's fee and numerous deposition transcripts, were reasonable and necessary. Plaintiff, therefore, requests an attorney fee award of one-third of the common fund and reasonable and necessary expenses in the amount of $2,940.99.

## CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. Plaintiff, therefore, respectfully requests that the Court approve the settlement in whole and without delay. Further, Plaintiff requests that the Court dismiss this case as outlined in Exhibit 2.

Respectfully submitted,

WILLIAMS DIRKS DAMERON, LLC


/s/ *Eric L. Dirks*
Eric L. Dirks, MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, MO 64105
dirks@williamsdirks.com
Tel: (816) 876-2600
Fax: (816) 221-8763

 /s/ *Michael Hodgson*
Michael Hodgson, MO Bar No. 63677
The Hodgson Law Firm, L.L.C.
6 NW Main St.
Lee's Summit, MO 64063
Tel: (913) 890-3529
mike@thehodgsonlawfirm.com

EMPLOYEE RIGHTS LAW FIRM
Law Offices of Mark A. Jess, LLC

*/s/ Mark A. Jess*
Mark A. Jess MO Bar No. 37946
1600 Genessee, Suite 842
Kansas City, MO 64102-5639
Ph:  816.474.4600
Fx:  816.474.4601
E-mail:  mark.jess@employeerightslawfirm.com
Website:  www.employeerightslawfirm.com


ATTORNEYS FOR PLAINTIFF AND ALL
SIMILARLY SITUATED INDIVIDUALS

11

Case 4:14-cv-00544-DW   Document 15   Filed 02/17/15   Page 11 of 12

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 17th day of February, 2015, the foregoing was filed using the Courts CM/ECF system which sends notice to the following:

Mark D. Downey
Hughes Arrell & Kinchen, LLP
3333 Lee Parkway
Suite 623
Dallas, Texas 75219
(214) 912-6746
mdowney@hakllp.com


Attorney for Defendant


                                            */s/ Eric L. Dirks*